UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **FLUOR CORPORATION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:08-CV-1556-B** |
| | § | |
| **CITADEL EQUITY FUND LTD.,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Fluor Corporation's Motion for Attorneys' Fees and Costs (doc. 144). Having considered the Motion, the Court finds that it should be and hereby is **GRANTED IN PART.** For the reasons discussed below, the Court finds that Plaintiff is entitled to attorneys' fees. However, the Court reduces the amount of fees requested in accordance with the standards for reasonableness.

## I.

## BACKGROUND

*A. The Underlying Action*

This is a declaratory judgment action arising under the Base Indenture and Supplemental Indenture (collectively, "Indenture Agreements") governing Plaintiff Fluor Corporation's ("Fluor") relationship with its note holders. Defendant Citadel Equity Fund, Ltd. ("Citadel") sought to convert its $58 million worth of Senior Notes after Fluor announced a stock-split on May 7, 2008. (Pl.'s Am. Compl. ¶12). The parties disagreed as to how the conversion provisions of the Indenture

Agreements should be interpreted. (Pl.'s Am. Compl. ¶13). Specifically, the parties disputed the value of the Closing Price used in calculating the number of shares due upon conversion. (Pl.'s Am. Compl. ¶13).

Fluor filed this action on September 3, 2008, seeking a judgment declaring that it complied with the Indenture Agreements, and that Citadel is not entitled to additional shares of Common Stock. (Pl.'s Am. Compl. ¶¶57-60). On September 4, 2008, one day after Fluor filed this suit in Federal Court, Citadel filed suit in Delaware State Court asserting a breach of contract claim against Fluor. (Lynn Aff. ¶3). Citadel voluntarily dismissed the Delaware case on September 22, 2008. (Lynn Aff. ¶5).

The parties filed cross motions for summary judgment on July 14, 2009. On January 15, 2010, the Court granted Fluor's motion for summary judgment and denied Citadel's cross-motion for summary judgment, finding that Citadel's interpretation of the Indenture Agreements would result in an unreasonable windfall to Citadel. (Order Granting Mot. Summ. J. Jan. 15, 2010). Citadel filed its Notice of Appeal of the Court's judgment on February 20, 2010. After hearing oral arguments, the Fifth Circuit affirmed the order granting summary judgment in favor of Fluor and remanded the case for a determination on costs and attorneys' fees.

*B. Motion for Attorneys' Fees*

Section 5.14 of the Base Indenture governs the awarding of attorneys' fees, stating:

> In any suit for the enforcement of any right or remedy under this Indenture or in any suit against the Trustee for any action taken or omitted by it as Trustee, a court in its discretion may require the filing by any party litigant (other than the Trustee) in the suit of an undertaking to pay costs of the suit, and the court in its discretion may assess reasonable costs, including reasonable attorneys' fees, against any party litigant in the suit, having due regard to the merits and good faith of the claims or defenses made by the party litigant. This Section 5.14 does not apply to a

> suit by the Trustee, a suit by a Holder pursuant to Section 5.07 or a suit by Holders of more than 10% in aggregate principal amount of the Outstanding Securities of any series, or to any suit instituted by any Holder of any Security for the enforcement of the payment of the principal of or interest on any Security on or after the Stated Maturity or Maturities expressed in such Security (or, in the case of redemption, on or after the Redemption Date).

(App. to Pl.'s Mot. Fees 46).

Section 22 of the Base Indenture also includes a choice of law provision stating that the Indenture is governed by principles of contract interpretation under New York law:

> The Indenture and this Senior Note shall be governed by and construed in accordance with the laws of the State of New York, as applied to contracts made and performed within the State of New York, without regard to principles of conflicts of law.

(App. to Pl.'s Mot. Fees 594).

Fluor filed its Motion for Attorneys' Fees and Costs on March 8, 2011, seeking $2,524,045.96 in attorneys' fees, including computer-assisted research costs, and $73,784.92 in other expenses. For the reasons discussed below, the Court **GRANTS IN PART** Fluor's Motion for Attorneys' Fees.

## II.

## ANALYSIS

*A. Choice of Law*

As an initial matter, the Court must determine what law governs interpretation of Section 5.14 of the Base Indenture. In its Motion, Fluor asserts that New York state law governs the awarding and reasonableness of attorneys' fees. (Pl.'s Mot. Fees 5-6). In its Response, Citadel argues that federal law controls because Section 5.14 is nearly identical to the attorneys' fees provision in the Trust Indenture Act ("TIA"). (Def.'s Resp. 2-5).

In the Fifth Circuit, awards for attorneys' fees are "governed by the same law that serves as

the rule of decision for the substantive issues in the case." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 614 (5th Cir. 2000)); *cf. Entergy Louisiana, LLC v. Wackenhut Corp.*, No. 09-7367, 2010 WL 4812921, at *2 n. 1 (E.D. La. Nov. 17, 2010) (recognizing that federal law controls where the motion at issue seeks an award of sanctions, rather than award of attorney's fees). New York state law served as the basis for the Court's summary judgment ruling in this case. (Order Granting Mot. Summ. J. Jan. 15, 2010) Accordingly, New York state law governs the awarding of costs and attorneys' fees.

Federal law controls when interpreting mandatory provisions of the TIA, but interpretation of indenture agreements is otherwise governed by state law principles of contract interpretation. *Affiliated Comp. Servs. v. Wilmington Trust Co.*, 565 F.3d 924, 930 (5th Cir. 2009) (holding that "[c]onstruction of §314(a) [of the TIA] is a matter of federal law..." but that provisions of the indenture agreement must be interpreted under contract principles of New York state law); *Bluebird Partners, L.P. v. First Fidelity Bank, N.A. New Jersey*, 85 F.3d 970, 974 (2d Cir. 1996) (recognizing that New York law governs interpretation of the indenture agreement, but holding that no interpretation of the indenture agreement was necessary to determine whether a federal claim under the TIA is automatically assigned to a subsequent purchaser).

Citadel contends that federal law applies because 15 U.S.C. §77ooo(e) is a mandatory provision of the TIA, but Citadel fails to present any binding authority to support this argument. (Def.'s Resp. 2-5). Unlike the TIA provisions discussed in *Affiliated Computer Services* and *Bluebird*, 15 U.S.C. §77ooo(e) is a default provision, not a mandatory provision. The TIA provides that certain language with respect to attorneys' fees will be automatically deemed to be included in an Indenture "*unless* it is expressly provided...that any such provision is excluded." 15 U.S.C.A.

§77ooo(e)(emphasis added). Because the Base Indenture includes an attorneys' fees provision drafted and agreed to by the parties, the default provision of the TIA does not apply. Thus, the Court will apply New York state law contract principles to the attorneys' fees provision of the Base Indenture, rather than analyze TIA's default attorneys' fees provision under federal law. *See Morris v. Cantor*, 390 F.Supp. 817, 822-823 (S.D.N.Y. 1975)(noting in dicta that the TIA "provides that the indenture *may* contain terms" providing for the awarding of costs)(emphasis added).

*B. Section 5.14 of the Base Indenture Agreement*

Having determined that state law controls the attorneys' fees analysis, the Court next addresses whether Fluor is entitled to an award. Under New York law, a party seeking costs and attorneys' fees must establish either statutory or contractual authority for such an award. *Devlin v. 645 First Ave. Manhattan Co.*, 229 A.D. 2d 343, 344 (N.Y. App. Div. 1996)(citing *Matter of* A.G. *Ship Maintenance Corp. v. Lezak*, 69 N.Y. 2d 1, 5 (N.Y. 1986)). Section 5.14 of the Base Indenture provides contractual authority for Fluor to recover costs and fees subject to the exceptions articulated within the provision, and subject to the court's discretion. (App. to Pl.'s Mot. Fees 46).

Section 5.14 first requires Fluor to establish that it is a party litigant in a suit "for the enforcement of any right or remedy under this Indenture...". (App. to Pl.'s Mot. Fees 46). In its Motion, Fluor maintains that this suit was filed to enforce its rights under the Indenture. (Pl.'s Mot. Fees 7-8). Specifically, Fluor states that it brought this suit to enforce its right to determine the appropriate conversion rate, and its right to calculate the number of shares to be paid to Citadel. (*Id.*) In its Response, Citadel argues that this is a declaratory judgment action seeking to establish the rights or relationship of the parties, and not an enforcement action. (Def.'s Resp. 6-8). Citadel's argument that a declaratory judgment action is not a suit for enforcement of a right is irrelevant.

The Indenture also allows party litigants to recover fees for a remedy, and a declaratory judgment is a type of remedy. N.Y.C.P.L.R. §3017 (MCKINNEY 2003). Citadel also attempts to argue that this is case is actual a suit to enforce the rights of Citadel because the roles of each party are reversed in a declaratory judgment action. (Def.'s Resp. 10). Again, Citadel's argument is irrelevant. Section 5.14 provides the Court with broad discretion over the awarding of costs and fees, allowing "any party litigant" to recover against "any party litigant" in the suit. (App. to Pl.'s Mot. Fees 46).

Next, Section 5.14 states that the Court's decision to award costs and fees to a party must be made with "due regard to the merits and good faith of the claims or defenses made by the party litigant...". (App. to Pl.'s Mot. Fees 46). In its Motion, Fluor maintains that it should be awarded attorneys' fees in light of its success on the merits. (Pl.'s Mot. Fees 9). Because Fluor unequivocally prevailed on summary judgment and on appeal, the Court finds that this analysis weighs in favor of awarding Fluor attorneys' fees.

Finally, none of the exclusions in Section 5.14 apply to the present case. The Base Indenture does not allow attorneys' fees to be awarded in suits brought by a Trustee, by a Holder pursuant to Section 5.07, or suits by Holders of more than 10% of the Outstanding Securities of any series. (App. to Pl.'s Mot. Fees 46). This suit was brought by Fluor, and Fluor is neither a Trustee nor a Holder as described in the exclusions. The Base Indenture also excludes attorney's fees awards in suits "instituted by any Holder...for the enforcement of the payment of the principal of or interest on any Security." (App. to Pl.'s Mot. Fees 46). In its Response, Citadel argues this is a suit brought to enforce the payment of principal of or interest on securities. (Def.'s Resp. 14-15). The Court disagrees with Citadel's characterization of this case. The issue at the heart of this suit is the rate that should be used upon conversion, not a payment of principal or interest.

*C. Reasonableness of Attorneys' Fees*

Having determined there is a contractual basis for awarding attorneys' fees and costs to Fluor, the Court next turns to the reasonableness of Fluor's requested award. Fluor requests $2,477,727.80 in attorneys' fees, $46,318.16 in Westlaw expenses, and $73,794.92 for other costs and fees incurred in the course of this litigation. (Pl.'s Mot. Fees 2). Fluor is not seeking costs or fees resulting from work done by non-attorney personnel, nor any costs incurred from work on the Delaware suit or the appeal. (Durst Aff. ¶18).

New York employs the "presumptively reasonable fee" method in determining an appropriate award of attorneys' fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). Ultimately, the Court's goal is to determine a fee that "is market-based, or in other words, 'the rate a paying client would be willing to pay'" for the services performed. *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100(KMW)(KNF), 2008 WL 2485407, at *8 (S.D.N.Y. June 18, 2008) (citing *Arbor Hill*, 522F.3d at 190)).

District courts should consider a variety of case-specific factors in reaching the "presumptively reasonable fee." *Arbor Hill*, 522 F.3d at 190. In making its calculations, the Court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively [and] consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.* The Court should also consider the *Johnson* factors developed by the Fifth Circuit. *Id.* The factors set forth in *Johnson* are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3)the level of skill required to perform the legal service

properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with client; and (12) awards in similar cases. *Arbor Hill*, 522 F.3d at 187 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The party seeking an award bears the burden of proving that the requested fee is reasonable.

i. Hourly Rate

The Court first considers the reasonableness of the hourly rate charged by Fluor's attorneys. The party seeking attorneys' fees bears the burden of establishing the prevailing market rate for similar services. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984). Nine attorneys worked on this case at the district court level. (Durst Aff. ¶ 9). The litigation team included partners Andrew M. Baker, Timothy S. Durst, Steven G. Schortgen, and Chad D. Burkhardt, as well as associates Todd Donohue, Jennifer Adams, Preston Bernhisel, Susan Cannon, and Talley R. Parker. (Durst Aff. ¶ 9). The attorneys work in the Houston and Dallas offices of Baker Botts, LLP. (App. to Pl.'s Mot. Fees 95-138). In his affidavit, Mr. Durst testifies that attorneys' hourly rates range from $255 to $825 based on each attorneys' years of experience. (Durst Aff. ¶15). Mr. Durst further testifies that those rates are reasonable and typical for the Texas legal market. (Durst Aff. ¶16). Baker Botts is one of the largest and most established law firms in Texas, and the attorneys who worked on this matter are highly qualified, as shown by the attorney biographies submitted as evidence in support of Fluor's Motion. (*See* App. to Pl.'s Mot. Fees 95-138). However, the Court finds that the hourly

fees charged by the Baker Botts attorneys are unreasonably inflated.

In other cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners. *E.g., Champion v. ADT Sec. Servs., Inc.*, No. 2:08-CV-417-TJW, 2010 WL 4736908, at * 8-9 (E.D. Tex. Nov. 16, 2010) (finding that $350 for partner-level work is reasonable given that the hourly rates for partners in the Eastern District of Texas range from $250 per hour to $450 per hour "for certain premium work"); *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 797-798 (S.D. Tex. 2009) (finding that rates of $510 per hour for a partner specializing in intellectual property law and $220 to $300 per hour for associates are reasonable); *cf., e.g., Ranger Steel Servs., LP v. Orleans Materials & Equipment*, No. 10-112, 2010 WL 3488236, at *1 (E.D. La. Aug. 27, 2010) (finding that hourly rates of $395 for partners are reasonable); *Hornbeck Offshore Servs., L.L.C. v. Salazar*, No. 10-1663, 2011 WL 2214765, at *2 (E.D. La. June 1, 2011) (finding hourly rates of $295 to $420 for partners and $180 to $195 for associates "are at the high end of rates," but finding an hourly rate of $450 reasonable for a partner with specialized qualifications); *Will v. Gen'l Dynamics Corp.*, No. 06-698-GPM, 2010 WL 4818174, at * 3 (S.D. Ill. Nov. 22, 2010) (finding a "reasonable blended rate for attorney time of $514.60 per hour, including $800 per hour for hours spent by senior partners" in a complex class action case "which few...law firms are capable of handling.").

Fluor contends that the amount of fees sought is reasonable given the amount in controversy. It is undisputed that Citadel's interpretation of the Indenture Agreement would have resulted in a $28,296,946 loss to Fluor. (Pl.'s Mot. Fees 1). The amount in controversy is not insignificant, but somewhat tempered by the fact that Fluor is a Fortune 500 company regularly dealing in transactions of this size. Additionally, the Court notes that prevailing on a case involving public companies and such a large dollar amount confers a significant reputational benefit to Baker Botts.

Fluor is requesting $2,477,727.80 for 5620.7 hours of legal work, an average of approximately $440 per hour. Taking into account the hourly rates for attorneys in other cases and the reputational benefits derived from representing Fluor in this matter, the Court finds that a 30% reduction from the requested hourly rates is appropriate, resulting in an average hourly rate of $300.

ii. Hours Expended

The party seeking an award must also establish that the number of hours expended are reasonable. *Days Inn Worldwide, Inc. v. Amar Hotels, Inc.*, No. 05 Civ. 10100(KMW)(KNF), 2008 WL 2485407, at *8 (S.D.N.Y. June 18, 2008) (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)) ("A party seeking a fee award must support the request with contemporaneous time records detailing, 'for each attorney, the date, the hours expended, and the nature of the work done.'"). The Court may reduce the requested award if it finds that the hours billed are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Additionally, fees for administrative tasks and other "less skilled work" performed by lawyers should be excluded from a fee award. *E.S. and M.S. o/b/o B.S. v. Katonah-Lewisboro School District*, —F.Supp.2d—, 2011 WL 1560866, at *7 (S.D.N.Y. Apr. 20, 2011) (citation omitted). In cases such as this, where "'the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent.'" *Id.* (quoting *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05-cv-8560, 2009 WL 7786, at *4 (S.D.N.Y. Jan. 12, 2009)). The Court can apply an across-the-board percentage reduction if it determines that the number of hours billed is unreasonably high. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d. Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d. Cir. 1997) ("A court has discretion to make

across-the-board percentage reductions to exclude unreasonable hours."). The Court should not evaluate "whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 2992) (citing *Woolridge v. Marlene Indus. Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990).

Here, the parties were engaged in litigation for seventeen months between the filing of the original complaint and the summary judgment ruling. Baker Botts billed 5620.7 hours between July 28, 2008 and February 28, 2011. (Durst Aff. ¶18). The Court finds that Baker Botts billed excessive hours on this matter. The contentious nature of the litigation does not alter the fact that this suit was ultimately a contract interpretation dispute disposed of on summary judgment. Fluor has submitted voluminous records describing the work done on this case, but in most instances fails to offer precise details explaining what issues each attorney was pursuing. (App. to Pl.'s Mot. Fees 140-529). The Court recognizes that much of Fluor's records have been redacted to protect work product and strategy information. (*See* Durst Aff. ¶12). However, Fluor is requesting an exceptionally large amount of attorneys' fees, and its generic time entries fail to justify such an award. The Court notes that it is impossible to tell whether Fluor is billing for duplicative or unnecessary work because the entries lack specificity, but there are several instances where multiple attorneys are working on the same project, making it likely that redundant work was performed. The Court further notes that a handful of entries describe administrative tasks, such as scheduling, performed by lawyers. Additionally, the records indicate that more than $350,000 was incurred after the summary judgment order was issued on January 15, 2010. (App. to Pl.'s Mot. Fees 411-528). The Court finds the number of hours expended after January 15, 2010 to be excessive given that

Fluor's only remaining task was to file its motion for attorneys' fees.

In its Response, Citadel specifically objects to Fluor's request for attorneys' fees for hours spent conducting discovery. (Def.'s Response 20). Citadel contends that Fluor's discovery was inefficient and irrelevant, producing a large amount of extrinsic evidence Fluor did not cite in its summary judgment briefing. (*Id.*). The Court recognizes that some discovery was necessary for Fluor to fully brief the case on summary judgment. However, the Court agrees with Citadel that Fluor's attorneys spent an excessive amount of time engaging in document review and conducting costly depositions.

For these reasons, the Court applies a 60% reduction to the number of hours billed by Fluor's attorneys, resulting in an award for 2248.28 hours of work. *Cf. Szczepanek v. Dabek*, No. 10-cv-2459, 2011 WL 846193, at * 9 (E.D.N.Y. Mar. 7, 2011)(finding a 70% reduction appropriate due to excessive hours billed and inflated rates charged). Applying the average hourly rate of $300 to 2248.28 hours worked results in an attorneys' fee award of $674,484.

iii. Costs and Expenses

Finally, the Court considers the reasonableness of the requested costs and expenses. The Court may award computer-assisted research costs as part of its attorneys' fees award. *Arbor Hill*, 369 F.3d at 97-98 ("If [counsel] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."). Fluor is requesting $46,318.16 for Westlaw research related to this matter. (Pl.'s Mot. Fees 19). The Court finds that the requested amount for research costs is reasonable.

Other expenses, including court filing fees, photocopying, and discovery services, are also recoverable, provided the party seeking an award offers adequate documentation justifying the

expenses. *See, e.g., Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10 Civ. 1853(PGG), 2011 WL 1002439, at *9 (S.D.N.Y. Mar. 16, 2011) (requiring litigants to detail the number of photocopies made, the cost per page, and why the photocopies were necessary in order to recover photocopying costs). Fluor is requesting $73,784.92 in other costs and expenses; $240.00 for witness fees, $1,176.75 for filing fees, $26,989.35 for photocopies, $382.96 for PACER charges, $603.75 for hearing transcripts, $33,107.42 for deposition transcripts, and $11,284.69 for deposition videos. (Pl.'s Mot. Fees 17; Durst Aff. ¶22-23). For the same reasons the Court is reducing the number of attorney hours billed for discovery, the Court reduces the award for deposition transcripts and videos by 20%, resulting in $35,513.69 for those services. Otherwise, the Court finds that Fluor's request for costs and expenses is reasonable. Accordingly, the Court awards Fluor $64,906.50 for costs and expenses.

## IV.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Fluor's Motion for Attorney Fees. The Court finds that Fluor is entitled to reasonable costs and attorneys' fees under the Indenture Agreements, but that the award requested by Fluor is unreasonably high. The Court finds that an award of $647,484 for attorneys' fees, $46,318.16 for computer-assisted research costs, and $64,906.50 for other reasonable expenses is reasonable, resulting in a total award of $785,708.66. The Court will issue a judgment separately from this Order.

**SO ORDERED.**

**SIGNED August 26, 2011**

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE